Exhibit "A"

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAWFIQ MORRAR and AMNA SALAMEH,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES and USDA FOOD & NUTRITION SERVICE,<br><br>Defendants. | No. 2:19-cv-00833-KJM-KJN<br><br>ORDER |

On May 29, 2019, plaintiff Tawfiq Morrar moved to preliminarily enjoin the United States and the USDA Food & Nutrition Service ("FNS" or collectively, "defendants") from further posting his name on the General Service Administration's System for Award Management's Excluded Parties List. Mot., ECF No. 7-1. Plaintiff represents that if his name is not removed from the list by June 28, 2019, he will be terminated from his employment as general counsel for Children's Choice Pediatric Dental Care. *Id.*; Saladin Decl., ECF No. 7-4, ¶¶ 10–18. Defendants opposed the motion, Opp'n, ECF No. 7, and plaintiff replied, Reply, ECF No. 21. On June 26, 2019, the court heard oral argument on the motion. Stewart Fried and Bashar Ahmad appeared on behalf of plaintiff; Edward Olsen appeared on behalf of defendants. After thorough consideration of the arguments and governing authority, the court GRANTED

plaintiff's motion for preliminary injunction on June 27, 2019.  ECF No. 26.  The court's reasons for its decision are provided below.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a practicing attorney admitted to the California bar, serves as general counsel for Children's Choice Pediatric Dental Care ("Children's Choice"), which is located in Sacramento, California.  Compl., ECF No. 1, ¶ 12.  Children's Choice participates in federal healthcare programs, including Medicare and Medicaid, which means it is subject to possible disgorgement, fines and penalties should it employ any person identified on the General Service Administration's System for Award Management's Excluded Parties List ("SAM list" or "EPL").  *Id.* ¶ 13; Saladin Decl. ¶ 11.  Plaintiff also owns[1] Folsom Food Market ("the Market"), a retail food store located in Folsom, California.  Compl. ¶¶ 17, 19.  In 2015, the Market obtained authorization to participate in Supplemental Nutrition Assistance Program ("SNAP"), a program of the Food and Nutrition Act of 2008.  *Id.* ¶ 21.

On March 6, 2017, following an undercover investigation, FNS sent plaintiff a letter charging the Market with "trafficking" in SNAP benefits in violation of FNS's SNAP regulations as set forth in 7 C.F.R. § 271.2.  *Id.* ¶ 25; Admin. Rec. ("AR"), ECF No. 14-1, at 72.  On March 15, 2017, plaintiff responded by letter to the FNS charges, explained what efforts he had made to rectify the purported violation and requested imposition of a civil monetary penalty in lieu of being disqualified from participating in SNAP, as allowed by the regulations.  AR 116–19.  After considering plaintiff's response, and the documentation he presented, FNS denied plaintiff's request for a civil monetary penalty and permanently disqualified the Market from participating in SNAP.  Compl. ¶ 28; AR 165–66, ECF No. 14-1 (reporting "your firm shall be

---

[1] Although Mamco Trading, Inc., a California corporation, is the named owner of Folsom Food Market, plaintiff is the sole shareholder of Mamco, and his name is personally listed as the Market's owner on the Supplemental Nutrition Assistance Program application.  Compl. ¶ 19; Morrar Decl., ECF No. 7-3, ¶ 4.

1    permanently disqualified"). On August 15, 2017, in light of this disqualification, FNS added
2    plaintiff's name to the SAM list.[2] Compl. ¶ 29.

3          On or about April 9, 2019, Children's Choice conducted a sanctions check as part
4    of a multi-pronged compliance program it had begun implementing. Compl. ¶ 32; Saladin Decl.
5    ¶¶ 9–10. In the course of the sanctions check Children's Choice discovered plaintiff's name on
6    the SAM list and then immediately notified him of the discovery. Compl. ¶ 32. Plaintiff was
7    unaware his name had been placed on the SAM list until he heard the news from Children's
8    Choice. Morrar Decl., ECF No. 7-3, ¶ 14. On April 17, 2019, Children's Choice suspended
9    plaintiff from his job because of the potential adverse effect his continued employment might
10   have on its eligibility to receive federal and state subsidies. Saladin Decl. ¶ 11. Children's
11   Choice will reinstate plaintiff, however, if his name is removed from the SAM list. *Id.* ¶ 12.
12   Children's Choice has extended plaintiff's time to obtain removal of his name from the SAM list,
13   but if he is unable to accomplish this goal by June 28, 2019, Children's Choice will permanently
14   terminate plaintiff's employment. *Id.* ¶ 16.

15         On April 26, 2019, plaintiff filed a petition with FNS Administrator and USDA
16   Deputy Acting Under Secretary, Brandon Lipps, requesting that plaintiff's name be removed
17   from the SAM list. Compl. ¶ 33. As plaintiffs' counsel reported at hearing, plaintiff's petition
18   was granted in part and denied in part, but FNS ultimately declined to remove his name from the
19   SAM list.

20         On May 10, 2019, plaintiff and his wife co-plaintiff Amna Salameh, filed suit in
21   this court seeking declaratory and injunctive relief on the following grounds: (1) FNS acted
22   outside the authority delegated it by Congress, engaging in actions *ultra vires* in listing plaintiffs
23   on the SAM list, and (2) those acts violated the Due Process Clause of the Fifth Amendment
24   because FNS failed to provide procedural due process protections before listing plaintiffs on the
25   SAM list. *See generally* Compl. Plaintiff asserts, without opposition, that the court's jurisdiction

---

[2] On August 15, 2017, FNS also added plaintiff's wife, co-plaintiff Amna Salameh, to the SAM list, Compl. ¶ 30; since that time, however, FNS has removed her name from the list, Fried Decl., ECF No. 7-2, ¶ 15; therefore, she does not join in the present motion.

over these claims and authority to grant declaratory relief is predicated on 28 U.S.C. §§ 1331, 1346, 2201–2202. On May 29, 2019, plaintiff filed his preliminary injunction motion seeking to enjoin FNS from further posting his name on the SAM list. Mot.

II.     STATUTORY AND REGULATORY FRAMEWORK

In 2008, Congress enacted the Food and Nutrition Act of 2008 (the "Act"), 7 U.S.C. §§ 2011–2036, a modern iteration of the Food Stamp Act of 1964. The purpose of the Act is "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." *Id.* § 2011. SNAP is a key component of the Act because it provides financial aid to low-income families in order to assist with monthly food expenses. *Id.* §§ 2011, 2013(a). Participating families receive an electronic benefit transfer card, which they can use to purchase eligible food items from participating food retail stores. *Id.* § 2016.

To become a SNAP-eligible retailer, a store must apply and receive authorization from FNS. *Id.* § 2018. Once approved, a store is subject to stringent FNS regulatory standards, with prevention of SNAP-benefit trafficking being chief among these regulatory goals. *See id.* § 2021; 7 C.F.R. § 271.2. The import of a trafficking offense is clear: violators face potential permanent disqualification, even as first-time offenders. 7 U.S.C. § 2021(b)(3)(B). Apart from the statutory and regulatory language itself, SNAP application, training and violation notice materials all advise participating retailers of the consequences of violating SNAP regulations. *Id.* § 2071; 7 C.F.R. § 278.1; AR 19, 28, 73, 144. If a violation determination becomes final, after a firm charged with a violation has exhausted or waived administrative review, FNS regulations provide that the violator is subject to the following disclosure provision:

> Public disclosure of firms sanctioned for SNAP violations. FNS may disclose information to the public when a retail food store has been disqualified or otherwise sanctioned for violations of the Program after the time for administrative and judicial appeals has expired. This information is limited to the name and address of the store, the owner(s') name(s) and information about the sanction itself. FNS may continue to disclose this information for as long as the duration of the sanction. In the event that a sanctioned firm is assigned a civil penalty in lieu of a period of disqualification, as described in § 278.6(a), FNS may continue to disclose this information for as long

>as the duration of the period of disqualification or until the civil penalty has been paid in full, whichever is longer.

7 C.F.R. § 278.1(q)(5).  While the FNS regulations do not reference the SAM list, FNS represents that it has posted the names of owners of disqualified firms on the SAM list since 2012.  Ocanovic Decl., ECF No. 13-1, ¶ 2.

As noted above, the SAM list is maintained by the federal General Services Administration; the list includes information regarding individuals who are suspended, debarred or disqualified from covered procurement-related transactions.  *See* 2 C.F.R. §§ 180.45(a)(1), 180.500.  As relevant here, disqualification is meaningfully different from suspension or debarment.  It is undisputed that plaintiff's disqualification is not from participating in procurement-related transactions.  AR 165 (advising of permanent disqualification from SNAP).  As explained by the USDA, a disqualified individual is barred from participation in specific agency programs, such as SNAP, whereas suspended or debarred individuals are barred from participating in programs government-wide.  Departmental Regulation ("DR") 2280-001, Fried Decl., ECF No. 7-2, Ex. B, at 28 (section entitled "Disqualification").  FNS's practice of disclosing a disqualified person such as plaintiff on the SAM list, rather than providing public disclosure in some other manner, is at the heart of this dispute.

III.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right[,]" *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and "should not be granted unless the movant, by a clear showing, carries the burden of persuasion[,]" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original)).  In determining whether to issue a preliminary injunction, federal courts must consider whether the moving party "[1] is likely to succeed on the merits, . . . [2] is likely to suffer irreparable harm in the absence of preliminary relief, . . . [3] the balance of equities tips in [the movant's] favor, and . . . [4] an injunction is in the public interest." *Id.* at 20.

The Ninth Circuit has "also articulated an alternate formulation of the *Winter* test." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). That formulation is referred to as the "serious questions" or the "sliding scale" approach: "'serious questions' going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("the 'serious questions' approach survives *Winter* when applied as part of the four-element *Winter* test," *id.* at 1132). "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Under the "serious questions" approach to a preliminary injunction, "[t]he elements of the preliminary injunction test must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

If a moving party asks the court to "order[] a responsible party to 'take action,'" as plaintiff does here, that requested "relief is treated as a mandatory injunction." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quotations omitted). "The 'district court should deny such relief unless the facts and law clearly favor the moving party.'" *Id.* (citing *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir.1994) (some internal quotations omitted)). In other words, "mandatory injunctions should not issue in 'doubtful cases.'" *Id.* (citing *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011)). This standard does not supersede the Ninth Circuit's "serious questions" test. Rather, the severity of the legal questions correlates with a movant's likelihood of success; the greater the likelihood of success, the less doubtful the case. *Cf. Fonseca v. Kaiser Permanente Med. Ctr. Roseville*, 222 F. Supp. 3d 850, 874 (E.D. Cal. 2016) (denying preliminary injunction where plaintiff failed to present serious questions, reasoning that "[m]andatory injunctions are incompatible with doubtful cases like this one.").

Moreover, in each case and irrespective of the approach to resolving a preliminary injunction, a court must balance the competing alleged harms while considering the effects on the

6

1  parties of the granting or withholding of the injunctive relief.  *Winter*, 555 U.S. at 24.  In

2  exercising that discretion, a court must also consider the public consequences of the extraordinary

3  remedy.  *Id.*

4  IV.     DISCUSSION

5          Plaintiff's motion for preliminary injunction is premised on both claims raised by

6  his complaint: (1) FNS violated the Due Process clause of the Fifth Amendment when it listed

7  plaintiff's name on the SAM list, and (2) FNS acted beyond its regulatory authority in doing so.

8  Mot. at 4–7.  Because the court decides the motion on the second *ultra vires* claim only, it does

9  not reach the due process question at this juncture.

10         A.      Constitutional Standing

11         As a threshold matter, the court addresses defendants' contention the court lacks

12  standing to hear this matter.  Opp'n at 13–14.  For Article III standing to adhere, three elements

13  must be satisfied: "(1) an injury in fact that (2) is fairly traceable to the challenged conduct and

14  (3) has some likelihood of redressability."  *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 908 (9th

15  Cir. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Here, defendants'

16  challenge is predicated on the second element, causation, as they argue plaintiff "does not explain

17  the basis for his conclusion that he cannot be employed as an attorney at any facility or entity that

18  engages in federally covered transactions . . . ."  Opp'n at 13.  In reply, plaintiff argues the

19  causation element is satisfied because the threatened injury "is traceable to FNS's listing of his

20  name on the SAM's EPL," which will deprive him of work generally in the field of health care

21  law, his primary specialty.  Reply at 9.

22         "To show causation, the plaintiff must demonstrate a 'causal connection between

23  the injury and the conduct complained of—the injury has to be fairly traceable to the challenged

24  action of the defendant, and not the result of the independent action of some third party not before

25  the court.'"  *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1227 (9th Cir. 2008)

26  (quoting *Lujan*, 504 U.S. at 560–61).  Still, "[c]ausation may be found even if there are multiple

27  links in the chain connecting the defendant's unlawful conduct to the plaintiff's injury, and there's

28  no requirement that the defendant's conduct comprise the last link in the chain."  *Mendia v.*

1    *Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014) (citing *Bennett v. Spear*, 520 U.S. 154, 168–69

2    (1997)).  The court finds a sufficient causal-connection between defendants' act of publishing

3    plaintiff's name on the SAM list and his impending termination from Children's Choice.  As

4    Children's Choice executive Dr. Jeffrey Saladin explains, were it not for plaintiff's inclusion on

5    the SAM list, he would not have been suspended and will not be terminated from his position as

6    general counsel.  *See* Saladin Decl. ¶¶ 10–18; *cf. Air Line Pilots Ass'n, Int'l v. Chao*, 889 F.3d

7    785, 789 (D.C. Cir. 2018) (in context of union relations, a "potential loss of [Union] jobs [is] a

8    sufficient injury to confer standing . . . ." (alterations in original)).  Based on this connection

9    alone, plaintiff has Constitutional standing to sue.

10           B.      Likelihood of Success on Merits of *Ultra Vires* Claim

11           In resolving a motion for preliminary injunction, "[l]ikelihood of success on the

12   merits is 'the most important' factor; if a movant fails to meet this 'threshold inquiry,' [a court]

13   need not consider the other factors.  *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citing

14   *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 869 (9th Cir. 2017)).  The court finds this

15   factor tips in plaintiff's favor given the serious doubts he has raised regarding the validity of

16   FNS's policy and practice of listing persons disqualified from the SNAP program, as opposed to

17   suspended or debarred, on the SAM list.  *See Alliance for the Wild Rockies*, 632 F.3d at 1135.

18           Plaintiff argues FNS has exceeded the authority delegated by Congress in adding

19   his name to the SAM list.  Specifically he says that FNS, as a subsidiary agency within the U.S.

20   Department of Agriculture ("USDA"), contravened express language of an internal 2013 USDA

21   Departmental Regulation ("DR") 2280-001, which prohibits SAM listing until certain agency

22   regulations have been amended.  Mot. 5–7; Reply 6–8.  Because no regulation has been amended

23   to authorize FNS's policy and practice of placing names of disqualified persons on the SAM list,

24   FNS has acted outside its lawful authority, *ultra vires*.  Mot. at 6.  Plaintiff argues that even if DR

25   2280-001 is merely guidance, and not a binding regulation, it has sufficient force such that FNS, a

26   subordinate agency within USDA, cannot ignore it.  *Id.*

27           Defendants argue to the contrary that the express language of a formal regulation

28   fully supports FNS policy and practice.  Specifically, the government points to 7 C.F.R.

§ 278.1(q)(5), which permits FNS, at its discretion, to publicly disclose the information of those sanctioned or disqualified from SNAP participation; listing on the SAM list is simply a form of public disclosure. Opp'n at 10–13. In response to plaintiff's argument that DR 2280-001 prohibits disclosure on the SAM list without amendment of formal regulations, defendants cite two audit reports produced by the USDA's Office of Inspector General ("OIG"), which take the position that FNS was obligated to disclose disqualified firms on the SAM list. *Id.* One of the reports, a 2010 OIG report,[3] recommended to the USDA that "agencies [] report their statutory disqualification actions in GSA's [SAM list] in accordance with USDA's suspension and debarment regulation." 2010 Report at 24. In response, the government argues, the USDA "agreed to issue a memorandum requiring its agencies to report disqualification to the SAM list"; DR 2280-001 was this formal guidance memorandum. Opp'n at 11. The government also points to the OIG's follow-up 2017 report[4] assessing the effectiveness of DR 2280-001, which concluded USDA's "OCFO [Office of the Chief Financial Officer] Did Not Fully Implement Recommendation 6," which required agencies report disqualifications in SAM. 2017 Report at 7. The 2017 report also urged that "the language in DR 2280-001 needed to be amended to require disqualified participants to be entered into SAM," and provide that "FNS will continue to use SAM as a means for sharing disqualified store information with other governmental agencies." 2017 OIG Report at 7, 11. Defendants argue that, taken together, the positions taken in the 2017 OIG Report, the broad authority to effect public disclosure granted by 7 C.F.R. § 278.1(q)(5) and

---

[3] A complete copy of the 2010 OIG report is available at https://www.usda.gov/oig/webdocs/50601-14-AT.pdf (last viewed June 28, 2019). Neither party lodged with the court an official copy of the 2010 OIG audit report. Defendants, however, have provided the preceding hyperlink to the USDA webpage, from which the report may be located. Opp'n at 10. Plaintiff has lodged no objection to the authenticity of this report. The court, therefore, *sua sponte*, takes judicial notice of the 2010 OIG audit report. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." (alterations and internal quotations omitted)).

[4] A complete copy of the 2017 OIG report is available at https://www.usda.gov/oig/webdocs/50016-0001-23.pdf (last viewed June 28, 2019). For the same reasons articulated in footnote 3 above, the court takes judicial notice of the 2017 OIG audit report.

1   DR 2280-001's lack of binding force, all undermine the notion that FNS acted outside its
2   authority in placing plaintiff's name on the SAM list.  Opp'n at 12.
3          "To challenge agency action on the ground that it is *ultra vires*, [plaintiff] must
4   show a patent violation of agency authority."  *Fla. Health Scis. Ctr., Inc. v. Sec'y of Health &*
5   *Human Servs.*, 830 F.3d 515, 522 (D.C. Cir. 2016) (quotations omitted); *cf. Jewel v. Nat'l Sec.*
6   *Agency*, 965 F. Supp. 2d 1090, 1111 (N.D. Cal. 2013) ("An [agency] officer may be said to act
7   *ultra vires* only when he acts without any authority whatever." (quotations omitted)).  "A
8   violation is 'patent' if it is '[o]bvious' or 'apparent.'"  *Fla. Health*, 830 F.3d at 522 (alterations in
9   original) (citing Black's Law Dictionary (10th ed. 2014)).  While recognizing the stringency of
10  this standard, the court finds plaintiff has raised such significant questions as to the permissibility
11  of FNS's act of publishing plaintiff's name on the SAM list in particular that the likelihood of
12  success tips sharply in his favor at this stage of the case.
13         As plaintiff's note, the language of USDA's 2013 internal regulation denominated
14  DR 2280-001 provides:

15  > Currently, the policy on listing disqualified persons or entities in the
16  > SAM varies from agency to agency.  In accordance with 2 C.F.R.
17  > §§ 180.25(c)(6), 180.45, OCFO will coordinate with the agencies
18  > that have disqualification procedures to determine the
19  > appropriateness of providing for the inclusion in the SAM of all
20  > persons or entities disqualified by USDA.  Such inclusion would
21  > require promulgation of an amendment to USDA's supplemental
22  > nonprocurement S&D regulations in 2 C.F.R. Part 417, and may also
23  > require the promulgation of amendments to agency disqualification
24  > regulations.

21  Fried Decl., ECF No. 7-2, Ex. B, at 28–29.  While the court does not fully embrace plaintiff's
22  reading of this provision, its language conveys USDA's position that it specifically considered the
23  question of disqualification raised by the OIG and the disqualification procedures followed by its
24  agencies, including FNS; USDA determined that an amendment to USDA's governing
25  regulations is necessary for disqualified persons to be included on the SAM list.  At hearing the
26  parties agreed that USDA regulations have not been amended to cure the omission the DR notes.
27         It is true, as defendants contend, and plaintiff concedes, *see* Reply at 6, that DR
28  2280-001 serves as agency guidance and lacks the full force of law.  *See Christensen v. Harris*

1  *Cty.*, 529 U.S. 576, 587 (2000) ("[I]nterpretations contained in policy statements, agency
2  manuals, and enforcement guidelines, all of which lack the force of law—do not warrant
3  *Chevron*-style deference."); *see also San Luis & Delta-Mendota Water Auth. v. United States*, 672
4  F.3d 676, 708 (9th Cir. 2012) (Department of Interior guidance memo lacked force of law).  But
5  the 2010 and 2017 OIG audit reports also do not have binding force, as they reflect the
6  investigative judgments and opinions of an agency within the USDA hierarchy.  While the OIG is
7  imbued with independence and is not technically subordinate to the USDA, the OIG does not
8  have the authority to override or direct USDA policy.  Rather the OIG's recommendations to the
9  USDA are just that, recommendations, and do not become official policy determinations of the
10 USDA itself – at least not unless or until the USDA accepts OIG recommendations and acts upon
11 them, or Congress directs the USDA to do so.  *Cf. Nat'l Aeronautics & Space Admin. v. Fed.*
12 *Labor Relations Auth.*, 527 U.S. 229, 258-60 (1999) (Thomas, J., dissenting) ("OIG is a
13 subcomponent of [parent agency] and subject to the 'general supervision' of its Administrator.";
14 it "has no determinative role in agency management's decisions").  Therefore, recommendations
15 provided in an OIG report are not afforded greater weight than the USDA's own language
16 embodied in DR 2280-001, reflecting the USDA's considered position.

17         A review of the overall regulatory scheme is helpful to complete the picture, with
18 the text of DR 2280-001 providing interpretive value.  As plaintiff's also note, the USDA has
19 formally adopted the Office of Management and Budget's ("OMB") guidance as part of the
20 USDA's own agency regulations, expressly for "nonprocurement debarment and suspension," 2
21 C.F.R. § 417.10, while not including additional language to cover "disqualifications."  The OMB
22 guidance adopted by the USDA does include permissive language, allowing that a "Federal
23 agency may add a subpart covering disqualifications to its regulation implementing these
24 guidelines," clarifying that the guidance itself addresses "disqualified persons only to [] [p]rovide
25 for their inclusion in SAM Exclusions . . ."  2 C.F.R. § 180.45.[5]

---

[5] "Disqualified persons" as used in the OMB guidance is defined to mean persons "prohibited from participating in specified Federal procurement or nonprocurement transactions as required under a statute, Executive order [] or other authority." 2 C.F.R. § 180.935.  The guidance provides as examples of covered disqualifications those effected under the Davis-Bacon

1       Even in isolation the permissive language of 2 C.F.R. § 180.45 cannot be read to
2  require disclosure of disqualified firms and their owners on the SAM list.  Given that the USDA
3  formalized its adoption of the OMB guidance for nonprocurement debarment and suspension
4  only, and not for disqualification, USDA regulations on their face do not presently provide for
5  inclusion of disqualified persons on the SAM list.  *See* 2 C.F.R. 417.10.  A close reading of the
6  regulations, in other words, confirms what the USDA has expressed in DR 2280-001:  namely
7  that until the USDA regulations at 2 C.F.R. Part 417 are amended to provide for the listing of
8  disqualified persons on the SAM list, the regulations do not authorize such listing, no matter how
9  consistent and well established the FNS policy and practice is of engaging in such listing.  In this
10 way, plaintiff is correct that the actions of FNS are *ultra vires*.

11      Moreover, there appears to be good reason for USDA's paying careful attention to
12 the significant distinctions between the nature of suspension and debarment, on the one hand, and
13 disqualification on the other.  Suspension and debarment have broader implications for
14 participation in government programs generally, and follow significant civil, if not criminal,
15 violations stemming from a range of serious enumerated activities.  *See* 2 C.F.R. § 180.800
16 (causes for debarment including criminal conviction or civil judgment for fraud, for example, or
17 serious violations affecting integrity of agency program); *id.* § 180.700 (suspension may be
18 imposed if debarment offense suspected based on indictment or other evidence or public interest
19 requires immediate action); *id.* § 180.605 (clarifying distinctions between suspension and
20 debarment).  In contrast, the disqualification in this case was effected through an administrative
21 finding on the papers alone, *see* 2017 OIG Report at 10 (noting FNS officials' position that "the
22 disqualification process (an administrative tool) would be a quicker way for removing program
23 violators than USDA's suspension and debarment program"), and disqualifies plaintiff from
24 participation in the SNAP program alone, id. ("FNS' disqualifications remove program
25 participants from FNS programs and do not prevent those program participants from participating
26 in other USDA or Federal agencies' programs.").  Given these distinctions, if the USDA is to

---

Act, 40 U.S.C. § 276(a), the equal employment opportunity acts, or the Clean Air and Water Acts, 42 U.S.C. § 7606 and 33 U.S.C. § 1368, respectively.  *Id.*

1  extend SAM listing to the persons its agencies disqualifies it must engage in formal rulemaking.
2  This is what the USDA acknowledges in DR 2280-001.

3  Defendants contend the broad language of the FNS regulation at 7 C.F.R.
4  § 278.1(q)(5), providing for "public disclosure" encompasses SAM list disclosure, and trumps
5  any countervailing language in DR 2280-001.  Opp'n at 12.  This argument is unpersuasive for
6  two reasons:  First, as explained above, the regulations of FNS's superior agency, the USDA,
7  specifically address what qualifies for SAM listing, namely suspension and debarment only.  2
8  C.F.R. § 417.10.  DR 2280-001 simply explains that, given the USDA's prior regulatory
9  determination to put limits on SAM listings, USDA's subordinate agencies cannot effect an end
10 run around the limitations.  *Cf. IMC Kalium Carlsbad, Inc. v. Interior Bd. of Land Appeals*, 206
11 F.3d 1003, 1009 (10th Cir. 2000) ("A decision of a subordinate agency division . . . does not bind
12 the agency."); *Am. Motorcyclist Ass'n v. Watt*, 534 F. Supp. 923, 934 (C.D. Cal. 1981) (giving no
13 weight to interpretive statements of subordinate agency official where "there [was] no official
14 interpretive or policy statement of the agency supporting this interpretation."), *aff'd*, 714 F.2d 962
15 (9th Cir. 1983).  Second, as matter of regulatory construction, "it is a commonplace . . . that the
16 specific governs the general."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S.
17 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 384 (1992)
18 (alteration in original)).  Here, the USDA's express recognition of the distinctions between and
19 among suspension, debarment and disqualification, the USDA regulation expressly excluding
20 disqualification from SAM listing status is the more particularized rule.

21 In sum, by posting plaintiff's name on the SAM list in the absence of clear
22 regulatory support, FNS acted in contravention of the USDA regulations providing for SAM
23 listing for suspended and disbarred parties only, which does not extend to SAM listing for
24 disqualified persons such as plaintiff, as signaled by the language of DR 2280-001.  *Cf. Poole v.*
25 *Rourke*, 779 F. Supp. 1546, 1565 (E.D. Cal. 1991) (finding Air Force "flouted" Department of
26 Defense regulations, which were controlling when they conflict with Air Force regulations).

27 For these reasons, the court is persuaded plaintiff has met his burden of showing a
28 likelihood of success on the merits as to his *ultra vires* claim.  This is particularly true under the

13

Ninth Circuit's sliding scale approach, in which the court considers the severity of the questions going to the merits of a claim. *Alliance for the Wild* Rockies, 632 F.3d at 1135. While the court finds the merits of plaintiff's claim tip sharply in the movant's favor, the strong equitable considerations discussed below move the scales further in plaintiff's direction. *Id.* at 1132.

### C. Likelihood of Irreparable Harm

A movant must show that absent a preliminary injunction he is likely to suffer irreparable harm; granting an injunction upon a showing only of possible harm would be "too lenient." *Winter*, 555 U.S. at 22. Here, the harm factor weighs heavily in plaintiff's favor. If plaintiff is not removed from the SAM list by June 28, 2019, his employment with Children's Choice will be terminated and his ability to provide financial support for his family will be impaired. Mot. at 8; Morrar Decl. ¶¶ 21–24; Saladin Decl. ¶¶ 10–18. As plaintiff's counsel clarified on the record during the preliminary injunction hearing, plaintiff's understanding is that Children's Choice will not reinstate his employment should he ultimately prevail in this action at some point down the road. Even if plaintiff were ultimately reinstated, he is likely to suffer damage to his professional reputation and job-seeking ability from having been terminated. *Cf. Passante v. Moore*, No. SACV 12-01866-JVS(ANx), 2012 WL 12878303, at *1 (C.D. Cal. Oct. 26, 2012) ("Damage to one's professional reputation constitutes irreparable injury as one cannot be made whole by financial recompense."). Finally, as signaled by the briefing, Reply at 3:13-15, and as plaintiff's counsel explained in more detail at hearing, plaintiff's wife is ill and currently is residing in Louisiana, where plaintiff is not a member of the bar. Children's Choice has allowed plaintiff to perform his job remotely from Louisiana, still operating under his license to practice law in California. If terminated, if he is to stay close to his wife, he would need to undergo the arduous process of becoming licensed and obtaining employment in Louisiana.[6] Taking all of

---

[6] In plaintiff's briefs and at hearing, counsel also suggested plaintiff has made a significant financial investment in Children's Choice and may lose some or all of that investment if he is terminated on June 28, 2019. *See also, e.g.,* Saladin Decl. ¶ 18. Although counsel declined to supplement the record with a more detailed proffer, it appears plaintiff may have a financial interests at stake beyond potential lost salary derived from his employment.

14

these considerations together, there is a significant likelihood plaintiff will suffer irreparable harm if the court does not grant the injunction he requests.

This factor, therefore, tips sharply in plaintiff's favor and provides strong equitable support for the requested relief.

D.   Balance of Equities and Public Interest

The balance of equities and public interest factors also tip in plaintiff's favor. FNS has a strong interest in deterring all forms of fraud and program abuse, of course, *see* Opp'n at 14–15, but it is not prevented from making public disclosure of plaintiff's disqualification in a manner other than placing plaintiff on the SAM list, as its regulations currently provide. There is no indication plaintiff poses an immediate risk to the integrity of any other government program; if he did, it appears FNS can take steps to seek his suspension under the applicable regulations. 2 C.F.R. § 417.10. In other arenas of his life, plaintiff remains in good standing with his employer, Saladin Decl. ¶ 17, and the California bar.[7] The balance of equities and the public interest favor the issuance of the preliminary injunction here.

E.   Imposition of a Bond

Because this action is equitable in nature, and defendants are federal entities who have not requested the posting of a bond, the court finds imposing a bond is not warranted. Fed. R. Civ. P. 65(c); *see also Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" (emphasis in original) (quoting *Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999))).

V.   CONCLUSION

The reasons set forth above explain why plaintiff's motion for preliminary injunction, ECF No. 7, was GRANTED on June 28, 2019. *See* ECF No. 26. The court's order is hereby CONFIRMED in that:

---

[7] *See* Attorney Licensee Profile, Tawfiq Jamil Morrar (June 24, 2019), http://members.calbar.ca.gov/fal/Licensee/Detail/291072.

1. Defendants are PRELIMINARILY ENJOINED from keeping or maintaining Tawfiq Morrar's name on the SAM list during the pendency of this litigation;
2. Defendants shall remove Tawfiq Morrar's name from the SAM list as soon as possible and shall provide him, via counsel, with written confirmation thereof; and
3. Plaintiff Tawfiq Morrar shall not be required to post a bond as a condition of issuance of this preliminary injunction order.

IT IS SO ORDERED.

DATED: June 28, 2019.

_____
UNITED STATES DISTRICT JUDGE